# REDACTED

WMN/AG:KKO
F.#2009R00637

**M-10-341**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR A     <u>TO BE FILED UNDER SEAL</u>
SEARCH WARRANT FOR:

THE PREMISES KNOWN AND DESCRIBED AS     AFFIDAVIT IN SUPPORT OF
ELECTRONIC MAIL ADDRESSES     <u>SEARCH WARRANT</u>

"cutyL33@aol.com"
"Jlewis8902@aol.com"
"wvonhar@aol.com"
"ilyak.nyc@gmail.com"
"aphroditeart@yahoo.com"
"asklepioc@yahoo.com"
"elaymanlibzo@yahoo.com"
"salim_iman@yahoo.com"
"windsorant@yahoo.com"
"elhams76@hotmail.com"
AND
"maanno21@hotmail.com".

- - - - - - - - - - - - - - - - - -X

BRENTON EASTER, being duly sworn, deposes and says:

I have been a Special Agent with the Department of
Homeland Security, Immigration and Customs Enforcement ("ICE")
for approximately five years.  During my time as a Special Agent,
I have been assigned to an ICE squad responsible for
investigating, among other things, cultural property crimes,
intellectual property crimes, counterfeiting, and money
laundering.

Upon information and belief, there is probable cause to
believe that there is located in THE PREMISES KNOWN AND DESCRIBED
AS ELECTRONIC MAIL ADDRESSES "cutyL33@aol.com",

"Jlewis8902@aol.com", "wvonhar@aol.com", "ilyak.nyc@gmail.com", "aphroditeart@yahoo.com", "asklepioc@yahoo.com", "elaymanlibzo@yahoo.com", "salim_iman@yahoo.com", "windsorant@yahoo.com", "elhams76@hotmail.com" and "maanno21@hotmail.com" (the "SUBJECT E-MAIL ACCOUNTS") subscriber/profile information, e-mail transmission information, subject headings, to/from information, folders and e-mail content (including all of the foregoing for deleted messages), as described more fully in Attachment A (Rider to AOL Order), Attachment B (Rider to Gmail Order), Attachment C (Rider to Yahoo! Order) and Attachment D (Rider to Hotmail Order), which constitute evidence, fruits and instrumentalities of (1) entry of goods by means of false statements, contrary to Title 18, United States Code, Section 542, (2) smuggling goods into the United States, contrary to Title 18, United States Code, Section 545, and (3) money laundering by transmitting funds from a place in the United States to a place outside the United States with the intent of promoting smuggling of goods, contrary to Title 18, United States Code, Section 1956(a)(2)(A).

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]     Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

2

1.     I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation, including statements made to me and my review of documents and records that have been obtained consensually, pursuant to Customs summonses, and pursuant to judicially authorized search warrants, (b) reports made to me by other law enforcement authorities, and (c) information obtained from confidential sources of information.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.  All assertions as to dates, times, and numbers are approximate and are based upon information and evidence that has been gathered to date in the investigation.

### Introduction

2.     Shipments of goods arriving at the ports of the United States must be granted "entry," or clearance, by the Department of Homeland Security, Customs and Border Protection ("Customs" or "CBP"), prior to the goods being allowed to enter the commerce of the United States.  The importer of a shipment of goods may obtain such clearance through the use of a "Customs Broker."  A Customs Broker is an individual or company licensed by Customs to file entry documents for commercial shipments.  The

3

importer (or agent of the importer) presents the Customs Broker with certain documents describing the shipment; the Customs Broker generates an entry package from these documents and provides them to Customs in order to obtain clearance for the goods to enter the United States.

3.     Statutes and regulations governing the importation process, including but not limited to Title 18, United States Code, Sections 541 and 542, and Title 19, United States Code, Section 1592, require persons bringing merchandise into the United States to provide truthful and complete statements to Customs about the merchandise.

4.     Some merchandise can also enter the United States via an "informal entry." Informal entries are permitted under Title 19, Code of Federal Regulations, Section 143.21 for goods meeting certain criteria, including a value of $2,000 or less. No Customs Broker or entry forms are required for an informal entry. The importer must, however, accurately list the contents of the package, country of origin, and the value of the contents on a shipping label. See 18 U.S.C. § 542.

5.     Based on the information provided in a Customs Broker's entry package or, for an informal entry, a shipping label, Customs may clear a particular shipment without inspecting it. Indeed, the large volume of cargo arriving at the ports each day prohibits Customs from examining every container or shipment

prior to Customs release.  Customs will target certain containers and air shipments for review and, on some occasions, will randomly examine air shipments.  If and when Customs clears a shipment based on documents provided by a Customs Broker, Customs informs the Customs Broker who, in turn, informs the importer that the shipment has been cleared.  After a shipment is cleared, it may be removed from the port and delivered to the importer or consignee.  For informal entries, if and when Customs clears a shipment, the carrier for the package (for example, an express mail service) resumes possession of the package and delivers it to the addressee.

6.   Based on my experience, training and discussions with other agents investigating crimes such as smuggling, importing and trafficking in cultural property, persons who smuggle cultural property into the United States typically avoid detection by Customs by means of false statements regarding the contents, value and countries of origin of their shipments.  In particular, they avoid listing countries of origin such as Egypt whose patrimony laws restrict the ownership and exportation of cultural property.  Importation of cultural property into the United States in violation of a foreign country's patrimony law violates the National Stolen Property Act, codified at Title 18, United States Code, Section 2315.  See United States v. Schultz, 333 F.3d 393, 410 (2d Cir. 2003).  Further, falsely identifying

country of origin on Customs entry paperwork constitutes a
material false statement under Title 18, United States Code,
Section 542.  See United States v. An Antique Platter of Gold,
991 F. Supp. 222, 230 (S.D.N.Y. 1997), aff'd, 184 F.3d 131, 137
(2d Cir. 1999).  An importer who uses entry documentation bearing
a false country of origin "without reasonable cause to believe
the truth of such statement" is guilty of a crime under Section
542.  18 U.S.C. § 542.  An importer who knowingly imports goods
or receives imported goods contrary to Section 542 also violates
Title 18, United States Code, Section 545.  18 U.S.C. § 545
(criminalizing the knowing importation of merchandise "contrary
to law" or knowing receipt of such merchandise).

Khouli's Use of E-mail to Communicate with Antiquities Dealers,
Customers and Others in Furtherance of Smuggling

        7.    Mousa Khouli, also known as "Morris Khouli"
("Khouli"), is an antiques dealer who owns and operates a
business called "Windsor Antiquities" ("Windsor").  Windsor sells
merchandise through a gallery located in New York, New York, and
through the Internet.  The websites used by Windsor to sell
antiques list the e-mail address "windsorant@yahoo.com" ("KHOULI
SUBJECT E-MAIL ACCOUNT #1") as contact information for Windsor.
For example, a check of the Windsor Antiquities eBay storefront
on March 29, 2010 shows that Khouli continues to sell
merchandise, including ancient cultural property, through this
website using KHOULI SUBJECT E-MAIL ACCOUNT #1.

                              6

8.    During the course of my investigation, I learned that Khouli was making false statements in his customs entry paperwork for cultural property shipments, including false countries of origin.  Based on this information, I applied for a search warrant in connection with KHOULI SUBJECT E-MAIL ACCOUNT #1.

9.    On May 13, 2009, the Honorable Joan M. Azrack, United States Magistrate Judge for the Eastern District of New York, granted the application for a warrant authorizing the search and seizure of records from KHOULI SUBJECT E-MAIL ACCOUNT #1 (the "May 13, 2009 search warrant").  A review of Khouli's e-mail records obtained as a result of this warrant confirms that Khouli used e-mail to communicate with sellers, purchasers, importers, dealers, customs brokers, and transporters of cultural property.  Some e-mails contained attachments showing the smuggled merchandise.  Notably, the e-mails revealed how various cultural property items were smuggled into the country by (1) making false statements regarding importers, item descriptions, invoices, and values of goods, and (2) failing to make required formal entries identifying the contents of packages mailed from abroad.  The e-mails also revealed that some buyers were aware that the provenance for the items they purchased was false. While some e-mail correspondence was deleted, numerous e-mail messages remaining in the account evidenced smuggling of cultural

7

property and the movement of money from the United States to
foreign bank accounts to pay for the smuggled goods and shipping
costs.

      10.  On the date that the May 13, 2009 warrant was
executed, Khouli's Yahoo! mailbox contained over 3,000 e-mail
messages from the period of December 2007 through May 2009.  In
light of Khouli's practice of saving e-mail messages, including
incriminating e-mail messages, for long periods of time, I
believe that KHOULI SUBJECT E-MAIL ACCOUNT #1 will contain new e-
mail messages that were sent or delivered following the date of
the execution of the May 13, 2009 search warrant and will provide
further evidence of smuggling and money laundering.  Where Khouli
has deleted such e-mails, I believe that incriminating e-mail
messages to or from Khouli and other sellers, purchasers,
importers, dealers, customs brokers, and transporters are likely
to be found in the accounts of persons with whom Khouli has
corresponded.  Those e-mail messages are also likely to have been
saved despite the passage of time, because e-mail accounts
serviced by Yahoo!, Gmail, AOL and Hotmail have high storage
capacities that make it unnecessary for users to delete e-mail in
order to maintain their accounts.  Further, individuals involved
in purchases, sales, importation and transportation of
merchandise are likely to save e-mail messages in order to retain
records of their transactions.  This is especially true where the

8

correspondent is not intentionally participating in smuggling or money laundering, but the fraud can be detected by reference to other documents, including Customs paperwork.

Use of E-mail Accounts Belonging to Khouli, Ramadan, Lewis and Aphrodite Art: The November 2008 Egyptian Coffin Smuggling Scheme

        11.  A review of e-mail records in KHOULI SUBJECT E-MAIL ACCOUNT #1 obtained via the May 13, 2009 search warrant revealed that Khouli purchased an ancient Egyptian coffin from an antiquities dealer named Ayman Ramadan ("Ramadan") in or about October 2008.  Ramadan operates a company called Nefertiti Eastern Sculptures Trading located in Dubai, United Arab Emirates ("UAE").  A comparison of Khouli's e-mail correspondence to his Customs entry paperwork shows that Khouli smuggled the coffin from the UAE into the United States in November 2008 under house air waybill ("HAWB") 3293.  E-mail records show that Khouli later offered the coffin to a customer named Joseph Lewis ("Lewis") for $65,000 and that Lewis ultimately purchased the coffin for $32,500.

        12.  On October 24, 2008, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to one of Ramadan's non-subject e-mail accounts asking how Ramadan was "going to send the complete coffin" as "it is a large piece[.]"[2]

_____

        [2]    This search warrant does not seek content for all e-mail accounts involved in the criminal activity.  Certain e-mail accounts are excluded because they are located overseas beyond the subpoena power of the United States.  Other e-mail accounts

9

13.   On November 17, 2008, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to Ramadan's elhams76@hotmail.com e-mail account ("RAMADAN SUBJECT E-MAIL ACCOUNT #1").  The e-mail chain contained an earlier message from Ramadan stating "I send the big sarcophagus yesterday."

14.   On November 18, 2008, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 account to RAMADAN SUBJECT E-MAIL ACCOUNT #1 providing bank wire details for a $3,400 wire from his New York bank account to Ramadan's Dubai bank account in connection with this shipment.

15.   On November 20, 2008, Khouli's customs broker, Agra Services ("Agra") filed entry paperwork for an item described as "antique wood panel[s]," country of origin UAE, being shipped to Windsor with HAWB 3293, the same HAWB number Ramadan provided to Khouli.  The Customs entry number was H67-1324607-1.  The "merchandise processing fee" was listed as $3,400, the same amount Khouli agreed to pay Ramadan and subsequently wired to the UAE.  The entry paperwork also included an invoice from Hassan Fazeli Trading Company LLC for two antique "wood panels" priced at $1,700 each, for a total of $3,400.

---

are excluded at this time because they are operated by a private company that does not have the same track record as AOL, Google, Hotmail and Yahoo! for maintaining the confidentiality of judicial orders regarding delayed notification to accountholders.

# REDACTED

Hassan Fazeli is one of Khouli's suppliers and is a known smuggler of cultural property from the UAE to the United States.[3]

16. On or about February 10, 2009, I visited Windsor's gallery in Manhattan and interviewed Khouli. I advised Khouli that I was investigating a shipment of wood panels from the UAE and showed him a CBP Automated Targeting System (ATS) database printout listing the shipping information for entry H67-1324607-1 describing the cargo as "wood panels."[4] At this time I did not have access to the KHOULI SUBJECT E-MAIL ACCOUNT #1 records produced pursuant to the May 13, 2009 search warrant and therefore did not know that the shipment actually contained an Egyptian coffin.

17. Khouli agreed to show me the wood panels and the paperwork pertaining to this shipment. Khouli then showed me five old, painted wood panels. Upon reviewing the e-mail obtained via the May 13, 2009 warrant, I found that Khouli had

---

[3]

[4]   The ATS database includes, among other information, electronically filed bills of lading, entries, and entry summaries for cargo imports.

11

offered one of these panels for sale as early as December 27, 2007, almost a year before the November 2008 shipment.

18.   Khouli's e-mail correspondence shows that immediately after making false statements to me about the contents of this shipment, Khouli set to work to sell the coffin. The next day, February 11, 2009, Jamal LNU at "aphroditeart@yahoo.com" (the "APHRODITE ART SUBJECT E-MAIL ACCOUNT") e-mailed a set of 15 photographs to KHOULI SUBJECT E-MAIL ACCOUNT #1.   The e-mail chain shows that Khouli had originally e-mailed the photographs to the APHRODITE ART SUBJECT E-MAIL ACCOUNT on December 26, 2008 from another e-mail account associated with Windsor, "cutyL33@aol.com" ("KHOULI SUBJECT E-MAIL ACCOUNT #2").[5]

19.   Later on February 11, 2009, Khouli responded to the e-mail thanking Jamal and calling him "a life saver."   Twelve minutes after receiving the pictures from the APHRODITE ART SUBJECT E-MAIL ACCOUNT, Khouli e-mailed a set of 15 photographs to Lewis at "jlewis8902@aol.com" (the "LEWIS SUBJECT E-MAIL ACCOUNT") showing the coffin Khouli smuggled into the United States in November 2008.   While the 15 images sent from the APHRODITE ART SUBJECT E-MAIL ACCOUNT are no longer attached to the e-mail in KHOULI SUBJECT E-MAIL ACCOUNT #1, the proximity in

---

[5]   This e-mail account is discussed further below at paragraphs 48-52.

time, number of attachments and other circumstances indicate that these were the same photographs Khouli had received from Jamal that day.

20.   In light of the foregoing facts, I believe that an Egyptian coffin was smuggled into the United States from the UAE in November 2008 by making false statements in Customs entry paperwork.  Specifically, the entry papers contain the following false statements: (1) the ancient Egyptian coffin is falsely described as "antique wood panel[s]", (2) the country of origin is the UAE, not Egypt, (3) the entry paperwork includes a fake invoice showing that Fazeli Trading sold Khouli two antique "wood panels" costing $1,700 each, for a total of $3,400.  In fact, Fazeli Trading was not involved in the sale of the coffin and $3,400 understates the value of the coffin.  Further, I believe that Khouli made false statements to me about the contents of the November 2008 shipment and then immediately made efforts to sell the actual contents of the shipment -- an ancient Egyptian coffin -- to distance himself from the evidence of his smuggling.

21.   Based on the foregoing e-mails, there is probable cause to believe that there will be additional e-mails evidencing smuggling of cultural property and money laundering in KHOULI SUBJECT E-MAIL ACCOUNT #1, RAMADAN SUBJECT E-MAIL ACCOUNT #1, the LEWIS SUBJECT E-MAIL ACCOUNT and the APHRODITE ART SUBJECT E-MAIL ACCOUNT.

13

Use of E-mail Accounts Belonging to Khouli, Ramadan, Alshdaifat,
Ahmed and Lewis: The Scheme to Smuggle a Three-Piece Egyptian
Nesting Coffin Set

22.   In August 2009, Customs intercepted a shipment of
antique South-Asian furniture from the UAE to KHOULI, which
included an undeclared two-piece Egyptian coffin set.  CBP later
seized the set, which consisted of the upper part of an outer
rectangular coffin enclosure (the "outer coffin") and an
anthropoid (person-shaped) coffin (the "middle coffin").  A third
anthropoid coffin was seized during a consensual search of
Khouli's garage in Brooklyn on September 8, 2009 (the "inner
coffin").  The inner coffin fits inside the middle coffin and
bears the same design elements and principal title of the
deceased person found on the middle coffin.  The middle coffin
fits inside the outer coffin.  According to an expert on Egyptian
antiquities who has personally viewed all three coffins in my
presence, the three coffins together comprise a three-piece
nesting sarcophagus set.

23.   A review of e-mail records in KHOULI SUBJECT E-
MAIL ACCOUNT #1 shows that Khouli purchased all three coffins
from Alshdaifat and Ramadan, smuggled them from the UAE into the
United States, and sold them to Lewis for $310,000, of which he
received $150,000.  To facilitate the purchase and smuggling of
these coffins, Khouli wired $20,000 abroad to Ramadan's Dubai

14

bank account and Lewis wired $150,000 abroad to Khouli's London bank account.

24. On March 7, 2009, Salim Alshdaifat sent an e-mail from a non-subject e-mail account to KHOULI SUBJECT E-MAIL ACCOUNT #1 with the subject line "Hello." In the e-mail, Alshdaifat wrote "plz see the attached photos . the whole coffin and the leds [sic] are for $70k, the coff[i]n by it[]self is $50k." Khouli forwarded the e-mail to himself at KHOULI SUBJECT E-MAIL ACCOUNT #1 on March 10, 2009 without the photographs attached. The original e-mail was deleted.

25. On March 10, 2009, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to "ahmed ahmed Egypt <maanno21@hotmail.com>" ("AHMED SUBJECT E-MAIL ACCOUNT"). Attached to the e-mail were 11 photographs of the middle and outer coffins.

26. On April 1, 2009, Khouli forwarded a set of photographs he received from Alshdaifat from KHOULI SUBJECT E-MAIL ACCOUNT #1 to the LEWIS SUBJECT E-MAIL ACCOUNT. The photographs show the middle and outer coffins. In the body of the e-mail, Khouli wrote to Lewis, "i was just offered this unbelievable piece i thought you might be interested. the size is 220cm long[.] what a large piece[.] the whole set is there[.] it is hard to come by these days." (Emphasis added.)

15

27. On April 2, 2009, Khouli wrote to Alshdaifat from KHOULI SUBJECT E-MAIL ACCOUNT #1 asking for the invoice and wire information. Alshdaifat responded by e-mail the same day by forwarding an e-mail from Ramadan at "elaymanlibzo@yahoo.com" ("RAMADAN SUBJECT E-MAIL ACCOUNT #2") with an invoice attached. The invoice listed the sale of an "Ancient Egyptian Wood painted sarcophagus" for $70,000 and a shipping cost of "$5,000." In the body of the e-mail, Alshdaifat requested that Khouli send a $20,000 deposit to Ramadan's bank account in Dubai, UAE.

28. On April 3, 2009, Khouli sent e-mails from KHOULI SUBJECT E-MAIL ACCOUNT #1 to Alshdaifat's and Ramadan's non-subject accounts showing that $20,000 had been wired to one of Ramadan's UAE bank accounts that day.

29. On April 13, 2009, Lewis sent an e-mail from the LEWIS SUBJECT E-MAIL ACCOUNT to KHOULI SUBJECT E-MAIL ACCOUNT #1 attaching a wire transfer request for $150,000 to be sent to Khouli's HSBC account in London, England.

30. On the same day, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to RAMADAN SUBJECT E-MAIL ACCOUNT #2 providing an address for Wayne Von Hardenberg ("Hardenberg") in Connecticut.

31. On April 17, 2009, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to Hardenberg at "wvonhar@aol.com" (the "HARDENBERG SUBJECT E-MAIL ACCOUNT"). In

16

the e-mail, Khouli thanked Hardenberg "for [his] help with the boxes."

32.   On April 18, 2009, Ramadan began sending Emirates Post tracking numbers to from RAMADAN SUBJECT E-MAIL ACCOUNT #2 to KHOULI SUBJECT E-MAIL ACCOUNT #1.  The United States Postal Service ("USPS") online tracking service shows that five packages were shipped to and signed for by Hardenberg.  After the first two packages were received, Khouli e-mailed Ramadan on April 24, 2009 to "ship the other half of the coffin."

33.   On April 29, 2009, Lewis sent an e-mail from the LEWIS SUBJECT E-MAIL ACCOUNT to KHOULI SUBJECT E-MAIL ACCOUNT #1 requesting an update.  Khouli responded, "<u>i got the first half of the cut inner coffin the second half is on the way</u>, shall I send it to you or should I wait for the <u>second half</u> and have [S]asha look at it and have it <u>fixed</u>?"  Lewis responded that "Sasha needs to <u>put them together</u>."  (Emphases added).  This e-mail exchange evidences Lewis's knowledge that the inner coffin had been cut in half and was being smuggled into the United States piece by piece.[1]

---

[1]     At the time that the inner coffin was seized at Khouli's home in Brooklyn, Khouli falsely stated that the coffin was a reproduction.  There is no reason to cut, smuggle and the restore a reproduction, as opposed to a genuine antiquity. Experts on Egyptian antiquities have since confirmed the inner coffin's authenticity.

34.   Later e-mails between KHOULI SUBJECT E-MAIL
ACCOUNT #1 and RAMADAN SUBJECT E-MAIL ACCOUNT #2 provided
additional tracking numbers for shipments that were signed for by
Hardenberg.  I therefore believe that these packages contained
the inner coffin, which was cut and shipped in four pieces, and
possibly one or more pieces of the outer coffin.

35.   In light of the foregoing facts, I believe it is
likely that KHOULI SUBJECT E-MAIL ACCOUNT #1, the AHMED SUBJECT
E-MAIL ACCOUNT, the LEWIS SUBJECT E-MAIL ACCOUNT, and the
HARDENBERG SUBJECT E-MAIL ACCOUNT will contain e-mail
correspondence from antiquities dealers and their customers and
associates evidencing smuggling of cultural property and money
laundering.

E-mail Between Khouli and Alexander "Sasha" Kalnitsky:
Restoration of Smuggled Cultural Property

36.   The e-mail exchanged between Khouli and Lewis on
April 29, 2009 mentions repair and restoration of the smuggled
pieces of the inner coffin by a person named "Sasha."  I
identified Sasha as Alexander "Sasha" Kalnitsky, an antiquities
restorer in New York.  During an interview with Alexander
Kalnitsky on February 20, 2010, he admitted that he had
reassembled the cut inner coffin and opined that the coffin had
been freshly cut within the past couple of years.

37.   On the same date, I also interviewed Alexander
Kalnitsky's son Ilya Kalnitsky.  Ilya Kalnitsky stated that his

father did not use computers so his father's customers occasionally used Ilya Kalnitsky's e-mail address, "ilyak.nyc@gmail.com" (the "KALNITSKY SUBJECT E-MAIL ACCOUNT") to communicate with Alexander Kalnitsky.

38. A review of KHOULI SUBJECT E-MAIL ACCOUNT #1 shows that on September 11, 2008, Ilya Kalnitsky sent an e-mail from the KALNITSKY SUBJECT E-MAIL ACCOUNT to KHOULI SUBJECT E-MAIL ACCOUNT #1, stating, "here's the email address by which you can send photos to my father (Alexander)." On September 12, 2008, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to the KALNITSKY SUBJECT E-MAIL ACCOUNT attaching photographs of an Egyptian coffin.

39. During the February 20, 2010 interview, Alexander Kalnitsky viewed the photographs attached to the September 12, 2008 e-mail and stated that he recognized the pictured coffin as one that he had restored for Khouli. He stated that this coffin also had a fresh cut that appeared to have been made within the last couple of years.

40. On February 20, 2010, Alexander Kalnitsky was in possession of an Egyptian falcon sarcophagus and mummy. He stated that he was restoring these items for Lewis.

41. The significance of the fact that Alexander Kalnitsky restored two cut Egyptian coffins for Khouli is that there is no reason to intentionally damage an ancient wooden

19

antiquity other than to conceal it during shipment to avoid scrutiny. A dealer who has a valid provenance would not damage such a valuable antiquity in order to transport it, nor would he send it in pieces. Knowledge that a wooden antiquity has been cut is therefore equivalent to knowledge that it has been smuggled and that the owner does not have a valid provenance for it. A fresh cut in an Egyptian antiquity is also circumstantial evidence that the item was removed from Egypt after the enactment of Egypt's patrimony law in 1983 and therefore constitutes stolen cultural property that has been transported in interstate and foreign commerce, received, sold, stored and concealed in violation of Title 18, United States Code, Sections 2314 and 2315.

42. In light of the foregoing facts, I believe it is likely that the KALNITSKY SUBJECT E-MAIL ACCOUNT will contain e-mail correspondence and attachments from antiquities dealers and their customers evidencing the presence of smuggled, and possibly stolen, cultural property in the United States.

E-mail Between Khouli and Alawi: Smuggling of Iraqi Cultural Property

43. On or about July 31, 2008, Professor Donny George Youkhanna, the former director of the Baghdad Museum in Iraq, contacted the United States Department of State regarding an antiquity on Windsor's website labeled "Rare Ancient Mesopotamian Terre-crue of a Man c. 2100 BC." Windsor described the item as

20

"found in Syria . . . . Sumerian 3rd Dynasty UR/Isin-Larsa[2] Circa
2100-1900 BC . . . . Uncleaned as found."[3]  The website listed
the item as "sold."  Professor Youkhanna is an expert on Iraqi
antiquities who has previously provided reliable information to
law enforcement agents concerning looted Iraqi cultural property.
Professor Youkhanna represented that the same ceramic head had
been photographed by German archeologist Susanne Osthoff
immediately after looters took it out of the ground at the Isin
excavation site in southern Iraq in May 2003 in violation of
Iraqi patrimony laws.  Professor Youkhanna obtained several of
Osthoff's photographs and forwarded those to the State
Department.  The color photographs show the same antiquity that
was on Windsor's website.  Specifically, the piece in the
photographs has the same features as the item on Windsor's
website, including a distinctive gap in the lower part of the

---

[2]     Isin and Larsa are ancient cities located in present-
day Iraq.  The Isin-Larsa period refers to the early second
millennium B.C. when these rival cities dominated ancient
Mesopotamia.  Isin-Larsa antiquities therefore originate in Iraq.
While artifacts may have moved in antiquity, objects from the
Isin-Larsa period are generally found in southern Iraq.

[3]     Based on my experience and training, the fact that an
item is listed as "unclean as found" is suspicious because an
antiquity removed from the ground prior to the 1970 UNESCO
Convention on the Means of Prohibiting and Preventing the Illicit
Import, Export and Transfer of Ownership of Cultural Property is
unlikely to appear unclean.  The dirt clinging to it would have
dried and fallen off over the course of time and owners of such
an antiquity would normally have attempted to clean and/or
restore it, in which case it also would no longer appear "unclean
as found."

21

face where the artifact was damaged. The State Department confirmed that the piece on the website was the same as the piece in the photographs and forwarded this information to ICE. Professor Youkhanna also directly reported this information to ICE and I personally discussed it with him.

44. On or about October 16, 2008, Windsor's Customs Broker, AGRA Services, Ltd. ("AGRA") produced documents to ICE agents that were responsive to a Customs Summons requesting copies of Windsor's Customs entry paperwork. None of the AGRA documents reflected the importation of the Iraqi ceramic head. Specifically, there were no Customs entry packages, invoices or other documents reflecting items of Iraqi origin (or Syrian origin, per Windsor's website). Further, the only imported items described as antique "terra cotta" figures, and therefore potentially matching the Iraqi ceramic head, listed the UAE as the country of origin.

45. On October 22, 2009, Khouli met with the government and ICE agents, including myself. During this meeting, Khouli was questioned about the Iraqi ceramic head. He stated that he purchased the head from an antiquities dealer named Henry Alawi ("Alawi").

46. A review of e-mail records in KHOULI SUBJECT E-MAIL ACCOUNT #1 shows correspondence between Khouli and Alawi at "asklepioc@yahoo.com" (the "ALAWI SUBJECT E-MAIL ACCOUNT") in

22

February 2009 concerning antique coins and pottery.  In the e-mail correspondence, Khouli asked for the price on a group of incantation bowls and other items that Alawi had shipped to him. In his response, Alawi advised Khouli that he had purchased a "lot" of incantation bowls for $100.  Selling cultural property in "lots" or "hordes" signifies that the items were recently excavated and looted from the country of origin.  Khouli has previously sold incantation bowls via e-Bay that were Iraqi in origin.  The e-mail chain also provides information for wiring funds to Alawi's Jordanian bank account to pay for Khouli's purchases.

47.   In light of Alawi's sale to Khouli of known looted Iraqi cultural property and his e-mail correspondence with Khouli regarding additional shipments of cultural property that may also have been looted from Iraq along with payment information involving a foreign bank, I believe it is likely that the ALAWI SUBJECT E-MAIL ACCOUNT will contain evidence of smuggling of cultural property and money laundering.

E-mail Forwarded Between Windsor's E-mail Accounts

48.   In the course of reviewing Khouli's e-mails, I learned that Khouli sometimes forwards e-mail between KHOULI SUBJECT E-MAIL ACCOUNT #1 account and another account, "cutyL33@aol.com" (previously defined as "KHOULI SUBJECT E-MAIL ACCOUNT #2").  A subsequent Internet search revealed that Windsor

23

uses KHOULI SUBJECT E-MAIL ACCOUNT #2 to sell ancient coins and Middle Eastern furniture via a second eBay storefront, "ArabianPalace." Individual items sold through ArabianPalace provide the e-mail address "cutyL33@aol.com" as contact information. The shipping and payment information for the ArabianPalace storefront states: "[Y]ou can paypal or send a check or money order to Windsor Antiques 160 east 56th street New York NY 10022 USA. Tel 212-319[-]1077." The listed telephone number is associated with Windsor's gallery at 1050 Second Avenue, New York, New York. A check of the ArabianPalace eBay storefront on March 29, 2010 shows that Khouli continues to sell merchandise, including ancient cultural property, through this website using KHOULI SUBJECT E-MAIL ACCOUNT #2.

49. As described above at paragraph 18, pictures of the coffin Khouli smuggled into the United States in November 2008 were forwarded from this account to the APHRODITE ART SUBJECT E-MAIL ACCOUNT in December 2008.

50. In addition, on April 14, 2009, Khouli forwarded to KHOULI SUBJECT E-MAIL ACCOUNT #2 an e-mail that Lewis sent to KHOULI SUBJECT E-MAIL ACCOUNT #1 on April 13, 2009. This e-mail chain concerned Lewis's purchase through Khouli of an ancient Egyptian coffin and Khouli's agreement to provide a false provenance. Attached to the e-mail was a bank confirmation of a wire transfer from Lewis to Khouli's London bank account.

51. Similarly, on May 13, 2009, Khouli forwarded to KHOULI SUBJECT E-MAIL ACCOUNT #2 an e-mail that Ramadan sent to KHOULI SUBJECT E-MAIL ACCOUNT #1 earlier that day. Attached to the e-mail was the air waybill for the shipment of an Egyptian coffin (described in the document as a "wooden panel") to Hardenberg.

52. In light of the foregoing facts, I believe it is likely that KHOULI SUBJECT E-MAIL ACCOUNT #2 will contain e-mail correspondence that evidences the smuggling of cultural property and money laundering.

<u>E-mail Correspondence Between Khouli and Alshdaifat</u>

53. As discussed above, Khouli and Alshdaifat corresponded by e-mail regarding the smuggling of Egyptian coffins from the UAE to the United States. In those e-mails, Alshdaifat used several e-mail accounts. A review of the e-mail obtained via the May 13, 2009 warrant shows that one of the e-mail accounts Alshdaifat used in connection with smuggling cultural property was "salim_iman@yahoo.com" (the "ALSHDAIFAT SUBJECT E-MAIL ACCOUNT").

54. For example, on October 2, 2008, Khouli sent an e-mail from KHOULI SUBJECT E-MAIL ACCOUNT #1 to ALSHDAIFAT SUBJECT E-MAIL ACCOUNT regarding coins that Alshdaifat purchased from Khouli. In the e-mail, Khouli wrote, "i got your check thanks[.] where do you want me to ship the coins? please confirm and if to

25

[C]anada what shall i decla[re] for customs." Alshdaifat responded on the same day from the ALSHDAIFAT SUBJECT E-MAIL ACCOUNT. In his response, Alshdaifat directed that the coins be sent to "Salem Alshdaifat" at an address in Ontario, Canada. In his e-mail, Alshdaifat also requested that Khouli declare the coins "as Numismatic items for research" and that Khouli not "incl[u]de any invoice inside." Khouli responded on the same date using the same e-mail accounts, "ok saleem[.] what value?"

55. This e-mail correspondence shows that Khouli smuggled coins to Alshdaifat in Canada by misrepresenting that coins for which he received payment were being sent for research and avoiding detection by omitting the invoice. The correspondence suggests that the value of the coins was also manipulated in order to avoid scrutiny by United States and Canadian customs.

### Request to Search the SUBJECT E-MAIL PREMISES

56. It is my belief that information stored in the SUBJECT E-MAIL ACCOUNTS likely includes correspondence with exporters, importers, antiques dealers, customers, and Customs Brokers, including invoices, item descriptions, country of origin information, digital photographs of items and bank account information. These e-mails and their attachments are likely to evidence illegal shipments of cultural property to the United States and the presence of illegally smuggled cultural property

26

in the United States. They are also likely to provide information that can be used to identify items that entered the United States by means of false statements to Customs; identify additional importers and exporters who are importing cultural property into the United States contrary to law; identify the true price paid by importers, and the timing and method of payment, including the transmission of funds from the United States to foreign bank accounts to promote smuggling; identify Customs Brokers who are facilitating the entry of cultural property into the United States contrary to law; reveal the methods that these parties use to conceal the true origin and nature of shipped items from Customs; and identify the ultimate recipients and purchasers of cultural property that entered the United States contrary to law.

WHEREFORE, your deponent respectfully requests that a search warrant be issued for THE PREMISES KNOWN AND DESCRIBED AS ELECTRONIC MAIL ADDRESSES "cutyL33@aol.com", "Jlewis8902@aol.com", "wvonhar@aol.com", "ilyak.nyc@gmail.com", "aphroditeart@yahoo.com", "asklepioc@yahoo.com", "elaymanlibzo@yahoo.com", "salim_iman@yahoo.com", "windsorant@yahoo.com", "elhams76@hotmail.com" and "maanno21@hotmail.com" to search and to seize the information described in Attachment A (Rider to AOL Order), Attachment B (Rider to Gmail Order), Attachment C (Rider to Yahoo! Order) and

27

Attachment D (Rider to Hotmail Order), concerning violations of Sections 542, 545 and 1956(a)(2)(A) of Title 18, United States Code, namely, entry of goods by means of false statements, smuggling goods into the United States and laundering money by transmitting funds from a place in the United States to a place outside the United States with the intent of promoting smuggling of goods, as well as other offenses.

BRENTON EASTER
Special Agent
Department of Homeland Security
Immigration & Customs Enforcement

Sworn to before me this
29th day of March 2010

UN.
EA:

JUDGE
YORK

## Attachment A (AOL Order)

### I.   Service of Warrant and Search Procedure

A.   The officer executing this warrant shall effect service by any lawful method to AOL.

B.   In order to minimize any disruption of computer service to innocent third parties, the officer executing this warrant shall direct AOL employees to locate, isolate, and create an exact duplicate of all records and contents of electronic mail associated with the applicable subscriber accounts described in Sections II and III, below, respectively.

C.   The term "electronic mail" includes all of the items described in this Attachment A in whatever form and by whatever means they may have been created or stored, including without limitation any electronic or magnetic form (such as hard drives, floppy disks, CD-ROMs, backup tapes, and printouts or readouts from any such media), and any handmade, mechanical, or photographic form (such as writing, printing, typing or photocopies).

D.   AOL employees will provide the exact duplicate in electronic form on a CD-ROM (or in printouts if the original records are not in electronic form) of the applicable electronic mail messages described in Section II and III below to the agent who serves this search warrant, who need not be present at the location specified in the warrant during AOL's retrieval of records, as permitted in 18 U.S.C. § 2703(g).

### II.   Electronic Mail and Other Records to be Copied by AOL Employees

For the period from January 1, 2009 to the date the warrant is signed by the Court, any and all AOL and/or AOL Instant Messenger ("AIM") records and other stored information pertaining to the categories specified below, in whatever form kept, in the possession or control of AOL, relating to the screen names "cutyL33@aol.com", "Jlewis8902@aol.com" and "wvonhar@aol.com" (the "electronic mail addresses").

1.   All electronic mail associated with the electronic mail addresses including electronic mail sent to, from, or through such subscriber accounts and attachments, whether or not the electronic mail has been retrieved, saved or deleted, and whether contained directly in the e-mail account or in a customized "folder";

1

2.    All AOL instant messenger ("AIM") messages, AOL calendar items, screen names, member profiles, contacts, buddy lists and the content of any AOL online account features such as AOL Pictures and Xdrive storage maintained by, or related to the accounts associated with the electronic mail addresses;

3.    All subscriber information (including subscriber names, addresses, telephone numbers, screen names, alternate e-mail addresses, dates of birth, social security numbers, account numbers, status of account, duration of account and method and source of payment);

4.    All account history (including customer Terms of Service and any complaints);

5.    All detailed billing records (including date, time, duration, and e-mail address or screen name used each time a particular account was activated);

6.    Complete log file of all activity relating to the account(s) (including dates, times, method of connection, port, dial-up and/or location, IP connection log data);

7.    All records of subscriber account preferences, including but not limited to, the name and Internet address of any "favorite places" or "book-marked" websites specified by the user(s) of the accounts;

8.    All web-pages, including any associated links, that were created or maintained by the user(s) of the above-described account.

## Attachment A (Hotmail Order)

### I.  Service of Warrant and Search Procedure

A.  The officer executing this warrant shall effect service by any lawful method to Hotmail.

B.  In order to minimize any disruption of computer service to innocent third parties, the officer executing this warrant shall direct Hotmail employees to locate, isolate, and create an exact duplicate of all records and contents of electronic mail associated with the applicable subscriber accounts described in Section II, below.

C.  The term "electronic mail" includes all of the items described in this Attachment A in whatever form and by whatever means they may have been created or stored, including without limitation any electronic or magnetic form (such as hard drives, floppy disks, CD-ROMs, backup tapes, and printouts or readouts from any such media), and any handmade, mechanical, or photographic form (such as writing, printing, typing or photocopies).

D.  Hotmail employees will provide the exact duplicate in electronic form (or in printouts if the original records are not in electronic form) of the applicable electronic mail messages described in Section II below to the agent who serves this search warrant, who need not be present at the location specified in the warrant during Hotmail's retrieval of records, as permitted in 18 U.S.C. § 2703(g).

### II.  Electronic Mail and Other Records to be Copied by Hotmail Employees

All records and other stored information pertaining to the categories specified below, in whatever form kept, in the possession or control of Hotmail, relating to the accounts associated with elhams76@hotmail.com and maanno21@hotmail.com, specifically:

1.  All electronic mail associated with the electronic mail address elhams76@hotmail.com and maanno21@hotmail.com, including electronic mail sent to, from, or through such subscriber accounts and attachments, whether or not the electronic mail has been retrieved, saved or deleted, and whether contained directly in the e-mail account or in a customized "folder,"

1

2.    All subscriber information (including subscriber names, addresses, telephone numbers, dates of birth, social security numbers, account numbers, status of account, duration of account and method of payment);

3.    All account history (including customer Terms of Service);

4.    All detailed billing records (including date, time, duration, and screen name used each time a particular account was activated);

5.    Complete log file of all activity relating to the accounts (including dates, times, method of connection, port, dial-up and/or location);

6.    Call records of subscriber account preferences, including but not limited to, the name and Internet address of any "favorite places" or "book-marked" websites specified by the user(s) of the accounts, along with any "address books," "buddy lists," or "member profiles" maintained by, or related to, the account(s); and

7.    All web-pages, including any associated links, that were created or maintained by the user(s) of the above-described account.

2

## Attachment A (Yahoo! Order)

**I.   Service of Warrant and Search Procedure**

A.    The officer executing this warrant shall effect service by any lawful method to Yahoo!.

B.    In order to minimize any disruption of computer service to innocent third parties, the officer executing this warrant shall direct Yahoo! employees to locate, isolate, and create an exact duplicate of all records and contents of electronic mail associated with the applicable subscriber accounts described in Sections II and III, below, respectively.

C.    The term "electronic mail" includes all of the items described in this Attachment A in whatever form and by whatever means they may have been created or stored, including without limitation any electronic or magnetic form (such as hard drives, floppy disks, CD-ROMs, backup tapes, and printouts or readouts from any such media), and any handmade, mechanical, or photographic form (such as writing, printing, typing or photocopies).

D.    Yahoo! employees will provide the exact duplicate in electronic form on a CD-ROM (or in printouts if the original records are not in electronic form) of the applicable electronic mail messages described in Section II and III below to the agent who serves this search warrant, who need not be present at the location specified in the warrant during Yahoo!'s retrieval of records, as permitted in 18 U.S.C. § 2703(g).

**II.   Electronic Mail and Other Records to be Copied by Yahoo! Employees**

For the period from January 1, 2009 to the date the warrant is signed by the Court, all records and other stored information pertaining to the categories specified below, in whatever form kept, in the possession or control of Yahoo!, relating to the accounts associated with ""aphroditeart@yahoo.com", "asklepioc@yahoo.com", "elaymanlibzo@yahoo.com", "salim_iman@yahoo.com" and "windsorant@yahoo.com":

1.    All electronic mail associated with the electronic mail addresses including electronic mail sent to, from, or through such subscriber accounts and attachments, whether or not the electronic mail has been retrieved, saved or deleted, and

1

whether contained directly in the e-mail account or in a customized "folder";

     2.   All chat messages, instant messages, calendar items, contacts, member profiles, buddy lists and the content of any YAHOO! online account features such as YAHOO! briefcase, YAHOO! 360, YAHOO! personals, and YAHOO! photos, maintained by, or related to the accounts associated with the electronic mail addresses;

     3.   All subscriber information (including subscriber names, addresses, telephone numbers, alternate e-mail addresses, dates of birth, social security numbers, account numbers, status of account, duration of account and method and source of payment);

     4.   All account history (including customer Terms of Service and any complaints);

     5.   All detailed billing records (including date, time, duration, and e-mail address or screen name used each time a particular account was activated);

     6.   Complete log file of all activity relating to the account(s) (including dates, times, method of connection, port, dial-up and/or location, IP connection log data);

     7.   All records of subscriber account preferences, including but not limited to, the name and Internet address of any "favorite places" or "book-marked" websites specified by the user(s) of the accounts;

     8.   All web-pages, including any associated links, that were created or maintained by the user(s) of the above-described account.

2

## Attachment A (Gmail Order)

### I.   Service of Warrant and Search Procedure

A.   The officer executing this warrant shall effect service by any lawful method to Google.

B.   In order to minimize any disruption of computer service to innocent third parties, the officer executing this warrant shall direct Google employees to locate, isolate, and create an exact duplicate of all records and contents of electronic mail associated with the applicable subscriber accounts described in Section II, below.

C.   The term "electronic mail" includes all of the items described in this Attachment A in whatever form and by whatever means they may have been created or stored, including without limitation any electronic or magnetic form (such as hard drives, floppy disks, CD-ROMs, backup tapes, and printouts or readouts from any such media), and any handmade, mechanical, or photographic form (such as writing, printing, typing or photocopies).

D.   Google employees will provide the exact duplicate in electronic form (or in printouts if the original records are not in electronic form) of the applicable electronic mail messages described in Section II below to the agent who serves this search warrant, who need not be present at the location specified in the warrant during Google's retrieval of records, as permitted in 18 U.S.C. § 2703(g).

### II.   Electronic Mail and Other Records to be Copied by Google Employees

All records and other stored information pertaining to the categories specified below, in whatever form kept, in the possession or control of Google Inc., relating to the accounts associated with ilyak.nyc@gmail.com, specifically:

1.   All electronic mail associated with the electronic mail address ilyak.nyc@gmail.com, including electronic mail sent to, from, or through such subscriber accounts and attachments, whether or not the electronic mail has been retrieved, saved or deleted, and whether contained directly in the e-mail account or in a customized "folder,"

2.   All subscriber information (including subscriber names, addresses, telephone numbers, dates of birth, social

1

security numbers, account numbers, status of account, duration of account and method of payment);

     3.    All account history (including customer Terms of Service);

     4.    All detailed billing records (including date, time, duration, and screen name used each time a particular account was activated);

     5.    Complete log file of all activity relating to the accounts (including dates, times, method of connection, port, dial-up and/or location);

     6.    Call records of subscriber account preferences, including but not limited to, the name and Internet address of any "favorite places" or "book-marked" websites specified by the user(s) of the accounts, along with any "address books," "buddy lists," or "member profiles" maintained by, or related to, the account(s); and

     7.    All web-pages, including any associated links, that were created or maintained by the user(s) of the above-described account.

sw.frm (Rev. EDNY 1996) Search Warrant

# United States District Court

_____ EASTERN _____ DISTRICT OF _____ NEW YORK _____

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED AS
ELECTRONIC MAIL ADDRESSES

"cutyL33@aol.com"
"Jlewis8902@aol.com"
"wvonhar@aol.com"

## SEARCH WARRANT
CASE NUMBER:

TO: **Special Agent Brent Easter** _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ **Special Agent Brent Easter** _____ who has reason to
                                                                    Affiant

believe that ☐ on the person of ☑ on the premises known as

ELECTRONIC MAIL ADDRESSES: "cutyL33@aol.com", "Jlewis8902@aol.com", "wvonhar@aol.com"

(This warrant hereby incorporates AOL Attachment A to describe the search procedure, as well as
which electronic mail and other records are to be copied by AOL employees and in turn searched by
special agents of the United States Immigration and Customs Enforcement.)

In the _____ EASTERN _____ District of _____ NEW YORK _____ there is now
concealed a certain person or property, namely (describe the person or property)

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before April _8_, 2010
                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search in the daytime - 6:00 A.M. to 10:00 P.M. and if the person or property be found there to
seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written
inventory of the person or property seized and promptly return this warrant to ___DUTY MAGISTRATE__ As required
by law.                                                                    United States Judge or Magistrate

_March 29_, 2010, in Brooklyn, New York     at   Brooklyn, New York _____
Date and Time Issued
Honorable Robert M. Levy, Magistrate Judge, EDNY
Name and Title of Judicial Officer

sw.frm (Rev. EDNY 1996) Search Warrant

# United States District Court

_____ EASTERN _____ **DISTRICT OF** _____ NEW YORK _____

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED AS
ELECTRONIC MAIL ADDRESSES

"aphroditeart@yahoo.com"
"asklepioc@yahoo.com"
"elaymanlibzo@yahoo.com"
"salim_iman@yahoo.com" AND
"windsorant@yahoo.com"

**SEARCH WARRANT**
CASE NUMBER:

TO:  Special Agent Brent Easter _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Special Agent Brent Easter _____ who has reason to
                                                              Affiant

believe that [   ] on the person of [✓] on the premises known as

ELECTRONIC MAIL ADDRESSES: "aphroditeart@yahoo.com", "asklepioc@yahoo.com",
"elaymanlibzo@yahoo.com", "salim_iman@yahoo.com" AND "windsorant@yahoo.com"

(This warrant hereby incorporates Yahoo! Attachment A to describe the search procedure, as well as
which electronic mail and other records are to be copied by Yahoo! employees and in turn searched
by special agents of the United States Immigration and Customs Enforcement.)

in the _____ EASTERN _____ District of _____ NEW YORK _____ there is now
concealed a certain person or property, namely (describe the person or property)

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before April _8_, 2010
                                                                       Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search in the daytime - 6:00 A.M. to 10:00 P.M. and if the person or property be found there to
seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written
inventory of the person or property seized and promptly return this warrant to __DUTY MAGISTRATE__ As required
by law.                                                                                   United States Judge or Magistrate

1:00PM   _March 29_, 2010, in Brooklyn, New York      at
Date and Time Issued
Honorable Robert M. Levy, Magistrate Judge, EDNY

Name and Title of Judicial Officer

sw.frm (Rev. EDNY 1996) Search Warrant

# United States District Court

_____EASTERN_____ **DISTRICT OF** _____NEW YORK_____

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED AS
ELECTRONIC MAIL ADDRESSES

"elhams76@hotmail.com" AND
"maanno21@hotmail.com"

## SEARCH WARRANT
CASE NUMBER:

TO: Special Agent Brent Easter _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____**Special Agent Brent Easter**_____ who has reason to
_____Affiant_____

believe that [ ] on the person of [✓] on the premises known as

ELECTRONIC MAIL ADDRESSES: "elhams76@hotmail.com" AND "maanno21@hotmail.com"

(This warrant hereby incorporates Hotmail Attachment A to describe the search procedure, as well as
which electronic mail and other records are to be copied by Hotmail employees and in turn searched
by special agents of the United States Immigration and Customs Enforcement.)

in the _____EASTERN_____ District of _____NEW YORK_____ there is now
concealed a certain person or property, namely (describe the person or property)

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before April 8, 2010 _____
_____Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search in the daytime - 6:00 A.M. to 10:00 P.M. and if the person or property be found there to
seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written
inventory of the person or property seized and promptly return this warrant to___DUTY MAGISTRATE__As required
by law.                                                                  United States Judge or Magistrate

1:04pm   March 29, 2010, in Brooklyn, New York        at (
Date and Time Issued
Honorable Robert M. Levy, Magistrate Judge, EDNY

Name and Title of Judicial Officer

sw.frm (Rev. EDNY 1996) Search Warrant

# United States District Court

_____ EASTERN _____ **DISTRICT OF** _____ NEW YORK _____

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED AS
ELECTRONIC MAIL ADDRESS

"ilyak.nyc@gmail.com"

**SEARCH WARRANT**
CASE NUMBER:

TO: Special Agent Brent Easter _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Special Agent Brent Easter _____ who has reason to

_____ Affiant _____

believe that ☐ on the person of ☑ on the premises known as

ELECTRONIC MAIL ADDRESS: "ilyak.nyc@gmail.com"

(This warrant hereby incorporates Gmail Attachment A to describe the search procedure, as well as which electronic mail and other records are to be copied by Gmail employees and in turn searched by special agents of the United States Immigration and Customs Enforcement.)

in the _____ EASTERN _____ District of _____ NEW YORK _____ there is now concealed a certain person or property, namely (describe the person or property)

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before April ✗, 2010 _____

Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search in the daytime - 6:00 A.M. to 10:00 P.M. and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to __DUTY MAGISTRATE__ As required by law.

United States Judge or Magistrate

1:06pm March 29 , 2010, in Brooklyn, New York _____

Date and Time Issued
Honorable Robert M. Levy, Magistrate Judge, EDNY

_____

Name and Title of Judicial Officer                                                          er